

The following constitutes
the order of the court. Signed December 06, 2010

_____
Stephen L. Johnson
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MESATRONIC USA, INC.,<br><br>    Debtor.<br>_____<br><br>MOHAMED POONJA,<br><br>    Plaintiff and Cross-Defendant,<br><br>v.<br><br>INTERNATIONAL CONTACT<br>TECHNOLOGIES INCORPORATED,<br><br>    Defendant and Cross-Complainant. | Case No. 08-53287 SLJ<br><br>Chapter 7<br><br><br><br>A.P. # 09-5049 |

**MEMORANDUM DECISION FOLLOWING TRIAL ON COMPLAINT
AND CROSS COMPLAINT**

**I.    INTRODUCTION**

    The court conducted a trial in this adversary proceeding on November 30, 2010. Plaintiff Mohamed Poonja ("Poonja"), trustee in the main case, was represented by Dennis Davis, Esq.

MEMORANDUM DECISION -1-

Defendant International Contact Technologies Incorporated ("ICT") was represented by Breck E. Milde, Esq.

For the reasons set out below, the court concludes that Poonja is entitled to judgment against ICT in the amount of $97,399.

## II.   FACTS[1]

Debtor Mesatronic, Inc. (the "Debtor") filed a chapter 7 bankruptcy petition on June 23, 2008. Poonja was appointed trustee of the estate. Shortly after his appointment, Poonja hired Barry Milgrom, Esq. ("Milgrom") and the Luce Forward law firm to represent the estate's interests.

At the time of filing, the Debtor possessed certain personal property including equipment and furnishings. Poonja did not do an inventory of the estate's assets initially. Instead, he relied on discussions with the Debtor's representative, Bernard Berger ("Berger"), and counsel for the Debtor, Michael Lewis ("Lewis"). Just a few days prior to the bankruptcy filing, the Debtor leased the estate's assets to a competitor known as Spire. In July 2008, Lewis sent a list of the Debtor's assets – then on lease to Spire – to Poonja. The list included an item referred to as a PBRX III. However, Berger told Poonja that the PBRX III did not belong to the Debtor. In fact, he told Poonja the PBRX III was owned by the Debtor's French parent and would be dealt with by the parent's bankruptcy trustee or French equivalent.

On August 12, 2008, Poonja, with the assistance of Milgrom, filed a Notice of Trustee's Intent to Sell Equipment at Auction and Opportunity for Hearing (the "Trustee's Sale Notice"). The Trustee's Sale Notice stated that Poonja would sell on behalf of the estate "all of the estate's right, title and interest in and to the manufacturing machinery and equipment, and the office equipment and software described on Exhibit A hereto." Exhibit A does not include a PBRX III. Poonja testified that the PBRX III was omitted because he had been told by Berger that it did not belong to the Debtor. The Trustee's Sale Notice states in clear terms that the sale is "as

---

[1]   The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

is where is" and "with all faults."

Prior to the auction sale, ICT's representatives inspected the Debtor's equipment, then in use by Spire. They took photographs of the equipment. The photographs show a PBRX III.

The auction was held by telephone on September 24, 2008. Present on the telephone was Poonja, Milgrom, Berger, Robert Arthur of Spire, and Paul Geary, an executive of ICT ("Geary"). Poonja and Milgrom both announced at the auction sale that the PBRX III was not part of the sale lot. Geary admits he was told by Poonja and Milgrom at the auction that the PBRX III was not part of the sale lot. There were two bidders at the sale, Spire and ICT. ICT submitted the winning bid at $250,000. Because it gave Poonja $36,000 in earnest money, ICT was obliged to pay immediately $214,000 to Poonja. In an e-mail dated September 26, 2008, Geary promised to send a check.

ICT never paid the balance due, in spite of Geary's promise to do so. Both Poonja and Milgrom made demands for the balance due. Concluding the auction had failed, Poonja resold the equipment at an auction, obtaining $125,601 from the purchaser. He sold minor items originally included in the ICT sale for $1,000. He incurred $10,000 in moving costs. He brought this lawsuit to recover the balance due.

ICT responded by filing a Counterclaim (the "Counterclaim") against Poonja. ICT maintains the parties did not form a contract at the auction sale due to mistake – either unilateral or mutual. In short, ICT explains that it did not pay the balance due because the sale failed to include a PBRX III. Geary explained at trial that prior to the auction, the equipment on Spire's premises included a PBRX III. ICT photographed the machine. Geary testified that he reviewed the original list of equipment provided by Lewis, and that list included a PBRX III. Based on that list and his photographs, he thought he was bidding on a PBRX III, among other assets.

### III. DISCUSSION

The essential question is whether the parties formed a contract during the conduct of the auction. A contract can be found where the parties have the capacity to contract, have given their consent, the subject of their consent is a lawful object, and there is consideration. 1 B.

Witkin, SUMMARY OF CALIFORNIA LAW (10th ed.) Contracts § 1; Cal. Civ. Code § 1550. The only dispute in this case pertains to consent. ICT maintains there is no consent due to a mutual or unilateral mistake of fact.

If a mistake is mutual, it can be plead as a defense to a contract. 1 B. Witkin, SUMMARY OF CALIFORNIA LAW (10th ed.) Contracts § 258; *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.,* 89 Cal. App. 4th 1042, 1049 (2001). "The existence of mutual assent is determined by objective criteria, not by one party's subjective intent. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.,* 89 Cal. App. 4th at 1050.

The court finds an agreement was made at the auction sale and ICT breached that agreement. There was no mutual mistake. The Trustee's Sale Notice had a list of equipment attached. It did not include a PBRX III. At the auction, Poonja and Milgrom both said the auction did not include a PBRX III. Indeed, Geary admitted at trial that Poonja and Milgrom told him the sale did not include a PBRX III. Thus, Geary and ICT were aware that the bankruptcy trustee was not selling a PBRX III.[2] In spite of this, ICT bid at the sale. It is impossible to conclude on this record that there was a mutual mistake.

A unilateral mistake may be grounds to find that a contract has not been formed properly. But a unilateral mistake is not grounds to void a contract if the party making the mistake failed to investigate properly. Under the Restatement (Second) of Contracts § 154, a party bears the risk of mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." At trial, it was clear there were several lists of equipment owned by the Debtor.

---

[2] The same can be said for ICT's claim that Poonja did not deliver software required to operate the equipment. The Trustee's Sale Notice identifies equipment for sale which includes office software. The Sale Notice did not specify the trustee was selling any other type of software. The evidence at trial showed that Spire needed to remove its software but the equipment would otherwise be useful when it was transferred. In the end, the equipment was never transferred because ICT failed to pay for it.

Geary testified that he relied exclusively on the list Lewis gave Poonja in July, which shows a PBRX III.  Geary ignored better information, including the Trustee's Sale Notice – which omitted the PBRX III.  He also admits being told at the auction the PBRX III was not included.  The court finds that ICT bore the risk of making this mistake because it failed to investigate or confirm that the PBRX III was included in the sale after being told the equipment was not included.

This is not a case in which the trustee or his counsel allowed ICT to labor under a misapprehension about what was being sold.  Rather, the trustee testified that he knew the PBRX III was an issue for ICT and he took pains to announce that the machine was not included in the sale.

ICT also asserts under California Civil Code § 1485 that any obligation it had to the bankruptcy estate was extinguished when ICT tendered full payment for the auction price.  Section 1485 provides that an obligation to perform can be extinguished when "an offer of performance" is made.  The Trustee's Sale Notice required payment in good funds.  Geary admitted he never gave the trustee a check for the balance due.  Section 1485 does not apply to this case.

Claims 1, 2 and 3 of ICT's Counterclaim are denied because the court finds a contract was entered into by the parties and breached by ICT.  Claim 4 is denied because it is not consistent with the findings noted above.  As they pertain to ICT, the facts showed that Poonja confirmed that the PBRX III was not included and told Geary it was not included.  Poonja's statutory duty to inventory assets runs to the bankruptcy estate, not to a third party bidder at a sale who had equal opportunity to determine what the estate possessed, what was for sale, and to evaluate its condition.

## IV.  CONCLUSION

For the foregoing reasons, judgment will be entered for Poonja and against ICT in the amount of $97,399.[3]  The trustee shall submit a form of judgment.

---

[3]  Calculated as follows:

|  |  | |
|---|---|---:|
| **Original Sales Price** | | $250,000 |
| **Less:** | Deposit | ($36,000) |
| | Later Sale of Assets | ($125,600) |
| | Later Sale of Assets | ($1,000) |
| **Plus:** | Moving Costs | $10,000 |
| **Net** | | **$97,399** |